No. ____

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

IN RE JEFFERY WILLIAM PAUL
Applicant-Movant.

APPENDIX TO APPLICATION FOR AUTHORIZATION TO FILE
A SUCCESSIVE MOTION UNDER 28 U.S.C. § 2255

CAPITAL § 2255 PROCEEDING

EDSON BOSTIC
FEDERAL DEFENDER
DISTRICT OF DELAWARE

Karl Schwartz
Assistant Federal Public Defender
Federal Defender Office
District of Delaware
800 North King Street, Suite 200
Wilmington, DE 19801

May 20, 2016

# TABLE OF CONTENTS

Superseding Indictment (US v. Paul) ...............................................1

Trial Transcript Excerpts (US v. Paul) ...............................................3

Penalty Phase Verdict Form (US v. Paul) .........................................25

Judgement and Order of Sentence (US v. Paul)...............................41

United States v. Gardner, No 14-4533 (4th Cir. May 19, 2016)..........46

Freeman v. United States (2d Cir.)............. ....................................66

Ruiz v. United States (7th Cir)........................................................67

In re Rico Bias (4th Cir.) ................. .............................................69

In re Damon Jones (4th Cir.)......................................................72

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. |
| vs. | ) | 18 U.S.C. § 1111(a) |
| | ) | 18 U.S.C. § 924(c)(1) |
| JEFFERY WILLIAM PAUL | ) | 18 U.S.C. § 924(i)(1) |
| | | 18 U.S.C. § 2 |

## SUPERSEDING INDICTMENT

The Grand Jury charges:

### COUNT 1

On or about the 22nd day of June, 1995, in the Western District of Arkansas, Hot Springs Division, the defendant, JEFFERY WILLIAM PAUL, and another person known to the grand jury, while aiding and abetting each other, within the confines of Hot Springs National Park, a place within the special maritime and territorial jurisdiction of the United States, pursuant to Title 18 U.S.C. § 7(3), did, with malice aforethought, kill Sherman Williams, by means of gunshot wounds, in the perpetration of a robbery, in violation of 18 U.S.C. § 1111(a) and § 2.

### COUNT 2

On or about the 22nd day of June, 1995, in the Western District of Arkansas, Hot Springs Division, the defendant, JEFFERY WILLIAM PAUL, and another individual known to the grand jury, while aiding and abetting each other, within the confines of Hot Springs National Park, a place within the special maritime and territorial jurisdiction of the United States, pursuant

A-1

to Title 18 U.S.C. § 7(3), did knowingly carry and use a firearm, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, to-wit: a robbery in the national park, Hot Springs, Arkansas, on or about June 22, 1995, as set forth in Count 1 of this indictment which is realleged and incorporated by reference herein, in violation of Title 18 U.S.C. § 924(c)(1), and in the course of this violation caused the death of a person through the use of a firearm, which killing is a murder as defined in Title 18 U.S.C. § 1111, in that the defendant, did unlawfully kill Sherman Williams by shooting him with the firearm in the perpetration of the robbery and attempted perpetration of the robbery in violation of Title 18 U.S.C. § 924(i)(1) and Title 18 U.S.C. § 2.


A True Bill.

                                                    P. K. Holmes III
                                                    United States Attorney


_____                                 By:
Foreperson                                          Steven N. Snyder
                                                    Senior Litigation Counsel
                                                    Assistant U.S. Attorney
                                                    Ark. Bar No. 72101
                                                    P. O. Box 1524
                                                    Fort Smith, AR  72902-1524
                                                    (501) 783-5125


FOIA EXEMPT



REVIEWED AND RELEASED BY
MAY 0 2 2006
NCRO LEGAL OFFICE

not find the defendant, Jeffery William Paul, guilty of the capital charge, then the jury's responsibilities are at an end. It is also the end, regardless of how the jury finds as to any other charges that are not capital charges. This is because the Court decides the punishment for non-capital cases.

If the jury reports that it finds the defendant, Jeffery William Paul, guilty of the capital charge, then we proceed to a second stage of this trial; a sentencing hearing at which the jury considers whether the death penalty should be imposed.

Now during the second phase or sentencing hearing, if any, the Government has the opportunity to introduce evidence of aggravating factors that might make the conduct alleged in the capital count so serious as to merit imposition of the death penalty. The defendant, in the second stage if any, has the opportunity to present mitigating factors about the crime or about himself that might suggest that the death penalty is not appropriate in this case.

No aggravating factor may be considered by the jury unless all jurors agree on that factor unanimously; nor can the jury find in favor of the death penalty unless it also unanimously agrees that the unanimously agreed upon aggravating factors sufficiently outweigh any mitigating factors that one or more jurors believe exist.

Even if no one of the jury finds that any mitigating factors exist, the jury cannot find in favor of the death penalty unless

everyone on the jury finds that the aggravating factors that the jury's have unanimously found to exist are sufficiently serious to justify a death sentence.

Even if the jury unanimously makes such findings, it is not required under law to find in favor of the death penalty. That is a matter for the jury to decide. If a jury does not unanimously find in favor of the death penalty, it may consider whether a sentence of life imprisonment without the possibility of release should be imposed, a decision that must also be unanimous.

If a jury unanimously finds in favor of the death penalty, this Court is required to sentence the defendant to death. If a jury unanimously finds in favor of a sentence of life imprisonment without the possibility of release, this Court is required to impose that sentence.

The indictment in this case charges the defendant, Jeffery William Paul, with two different crimes. The two counts of the indictment may be summarized as follows. You may recall in the voir dire process, I read the indictment. I will not read it this time; I will summarize.

Count 1 may be summarized by saying it alleges that on or about the twenty-second day of June, 1995, the defendant, Jeffery William Paul, and another individual known to the grand jury, while aiding and abetting each other, did with malice aforethought kill Sherman Williams by means of gunshot wounds in the

have for or against any party; the means the witness had of acquiring knowledge concerning any matter to which the witness testified; any interest the witness my have in the outcome of the case; and the consistency or the inconsistency of the testimony of the witness, as well as it's reasonableness or unreasonableness.

You have heard evidence that witness Kris Rogers was once convicted of a crime. You may use that evidence only to help you decide whether to believe the witness and how much weight to give his testimony.

You have heard testimony from persons described as experts. Persons who by knowledge, skill, training, education or experience have become expert in some field may state their opinion on matters in that field and may also state the reasons for their opinions.

Expert testimony should be considered just like any other testimony. You may accept or reject it and give it as much weight as you think it deserves, considering the witnesses education and experience, the soundness of the reasons given for the opinion, the acceptability of the methods used, and all the other evidence in the case.

The indictment in this case charges the defendant, Jeffery William Paul, with two different crime and reads as follows:

Count 1: On or about the twenty-second day of June, 1995, in the Western District of Arkansas, Hot Springs Division, the

A-5

defendant, Jeffery William Paul, and another individual known to the grand jury, while aiding and abetting each other within the confines of Hot Springs National Park, a place within the special maritime and the territorial jurisdiction of the United States pursuant to Title 18, U.S. Code Section 73, did with malice aforethought, kill Sherman Williams by means of gunshot wounds in the perpetration of robbery in violation of 18 U.S. Code Section 1111(a) and Section 2.

Count 2: On or about the twenty-second day of June, 1995, in the Western District of Arkansas, Hot Springs Division, the defendant, Jeffery William Paul, and another individual known to the grand jury, while aiding and abetting each other within the confines of Hot Springs National Park, a place within the special maritime and territorial jurisdiction of the United States pursuant to Title 18, U.S. Code Section 73, did knowingly carry and use a firearm during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, to wit: a robbery in the National Park, Hot Springs, Arkansas, on or about June 22, 1995, as set forth in Count 1 of this indictment which is realleged and incorporated by reference herein, in violation of 18 U.S. Code Section 924(c)(1) and in the course of this violation caused the death of a person through the use of a firearm, which killing is a murder as defined in Title 18, U.S. Code Section 1111, in that the defendant did unlawfully kill Sherman Williams by shooting him with a

firearm in the perpetration of the robbery and attempted perpetration of the robbery in violation of Title 18, U.S. Code Section, 924(i)(1) and Title 18, U.S. Code, Section 2.

The defendant has plead not guilty to these charges.

As I told you at the beginning of the trial, an indictment is simply an accusation. It is not evidence of anything. To the contrary, the defendant is presumed to be innocent. Thus the defendant, even though charged, begins the trial with no evidence against him. The presumption of innocence alone is sufficient to find the defendant not guilty and can be overcome only if the Government proves beyond a reasonable doubt each essential element of one or more of the crimes charged.

There is no burden upon a defendant to prove that he is innocent. Thus, the defendant does not have to call any witnesses or present any evidence to prove innocence. Further, the law does not compel defendant to take the witness stand and testify. Accordingly, the fact that defendant did not testify must not be considered by you in any way or even discussed in arriving at your verdict.

Keep in mind that each count charges a separate crime. You must consider each count separately and return a separate verdict for each count.

A reasonable doubt is doubt based upon reason and common sense and not the mere possibility of innocence. A reasonable doubt is the kind of doubt that would make a reasonable person

hesitate to act. Proof beyond a reasonable doubt, therefore, must be proof of such convincing character that a reasonable person would not hesitate to rely and act upon it. However, proof beyond a reasonable doubt does not mean proof beyond all possible doubt.

You will note that the indictment charges that the offense or the offenses were committed on or about a certain date. The proof need not establish with certainty the exact date of the alleged offense. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offenses were committed on a date reasonably near the date alleged.

In order to sustain it's burden of proof for the crime of first degree murder as charged in Count 1 of the indictment, the Government must prove the following three essential elements beyond a reasonable doubt:

One: The acts or act of killing Sherman Williams without lawful justification;

Two: The acts or act of killing was done with malice aforethought; and,

Three: That such act or acts of killing were done in the perpetration of a robbery.

For you to find the defendant of the crime charged under Count 1, the Government must prove all of these essential elements beyond a reasonable doubt; otherwise, you must find the defendant not guilty under Count 1.

Malice aforethought means an intent at the time of the killing willfully to take the life of a human being, or an intent willfully to act in callous and wanton disregard of the consequences to human life; but malice aforethought does not necessarily imply any ill will, spite or hatred towards the individual killed.

Malice, as the term is used here, is but another name for a certain state or condition of a person's mind or heart. Since no one can look into the heart or mind of another, the only means of determining whether or not malice existed at the time of the killing is by inference drawn from the surrounding facts and circumstances as shown by the evidence in the case.

In determining whether Sherman Williams was unlawfully killed with malice aforethought, the jury should consider all the facts and circumstances preceding, surrounding, and following the killing as shown by the evidence in the case which tend to shed light upon the condition of mind and heart of the killer before and at the time of the deed. No fact - no matter how small - and no circumstance - no matter how trivial - which bears upon the question of malice aforethought should escape careful consideration by the jury.

In determining whether the Government has sustained its burden of proof on the question of whether the defendant acted with malice aforethought, you may consider whether or not the defendant used a weapon or other instrument and you may also

consider the manner in which the death was caused.

You may not find the defendant guilty of first degree murder by reason of killing during the perpetration of a robbery unless you find beyond a reasonable doubt that at the time of the killing, the defendant was engaged in the perpetration of a robbery as defined in these instructions.

The crime of robbery has three essential elements which are:

One; that Sherman Williams had in his possession or on his person or presence anything of value.

Two; that the defendant took and carried away anything of value from Sherman Williams by force or violence, and

Three; that the taking occurred within the boundaries of the Hot Springs National Park.

Possession of property recently stolen, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find in light of surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen.

Possession of property recently stolen, if not satisfactorily explained, is also ordinarily a circumstance from which the jury may reasonably draw the inferences and find in light of the surrounding circumstances shown by the evidence in the case that the person in possession not only knew it was stolen property but also participated in some way in the theft of the property.

A-10

Ordinarily, the same inferences may reasonably be drawn from a false explanation of possession of recently stolen property.

The term "recently" is a relative term and has no fixed meaning. Whether property may be considered as recently stolen depends upon the nature of the property and all the facts and circumstances shown by the evidence of the case. The longer the period of time since the theft, the more doubtful becomes the inference which may reasonably be drawn from an unexplained possession.

If you find beyond a reasonable doubt from the evidence in the case that the victim's automobile and money were stolen; that while recently stolen, the property was in the possession of the accused, you may from those facts draw inference not only that the victim's automobile and money were possessed by the accused with knowledge that the property was stolen, but also that the accused participated in some way in the theft of the property, unless possession of the recently stolen property by the accused is explained to the satisfaction of the jury by other facts and circumstances in this case.

In considering whether possession of recently stolen property has been satisfactorily explained, you are reminded that in the exercise of constitutional protected rights, the accused need not take the witness stand and testify.

There may be opportunities to explain possession by showing

A-11

other facts and circumstances independent of the testimony of the defendant.

You will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in the case warrant any inference which the law permits you to draw from possession of recently stolen property. If any possession the accused may have had of recently stolen property is consistent with innocence or if you entertain reasonable doubt of guilt, you must acquit the accused.

The law permits the jury to determine whether the Government has proven the guilt of a defendant for any less serious offense which is by its very nature necessarily included in the crime charged in Count 1 of the indictment.

If, therefore, you unanimously find the defendant, Jeffery William Paul, not guilty of the crime of murder in the first degree as charged in Count 1 of the indictment; or if after reasonable efforts you are unable to decide unanimously on the guilt or innocence of the defendant for this charge, then you must proceed to determine whether or not the Government has proven the guilt of the defendant beyond a reasonable doubt for any less serious offense necessarily included in that charge.

The crime of murder in the first degree as charged in Count

BY MR. WILLIAMS: That works.

BY THE COURT: Are we ready?

BY MR. SNYDER: I've got to go get a file out of my office.

BY THE COURT: Okay. All right. We'll give you about two minutes and then we'll be ready.

[Open Court - 2:58 p.m. - Jury Present]

BY THE COURT; Thank you, ladies and gentlemen. Please be seated.

All right. Members of the jury, these will be preliminary instructions for Phase 2 and they are so labeled. They will be characterized as Instruction Number 27 in your instruction booklet.

Members of the jury, at the beginning of this trial I told you that a capital case such as this potentially has two stages.

(A) The first stage requires the jury to determine whether the Government can prove it's charges against the defendant beyond a reasonable doubt.

(B) The second stage, if any, occurs only if the jury determines that the Government has proved its charges against the defendant beyond a reasonable doubt. And in the second stage, the jury is required to consider whether the death penalty should be imposed on the defendant.

By your verdict, you have unanimously found the defendant guilty of the offense charged in Counts 1 -- the offenses

charged in Counts 1 and 2 of the indictment.

Accordingly, we now move to the second stage of this capital proceeding, which is the penalty phase of the trial. In this second phase of the trial, it will be your responsibility to make the following determinations with respect to the sentence to be imposed upon the defendant.

(A) Whether you unanimously find that there are aggravating circumstances and, if so,

(B) Whether any one or more of the jurors find that there are mitigating circumstances and, if so,

(C) Whether aggravating circumstances outweigh mitigating circumstances and finally,

(D) Whether defendant should be sentenced to death or to life imprisonment without possibility of release.

You were told that you must not consider the race, color, religious beliefs, national origin or sex of the defendant or of the victim in deciding whether to impose the death penalty.

At the time you return your verdict, each of you will be required to certify that he or she has not been influenced by such factors in connection therewith.

This second phase of the trial will proceed in the following fashion:

First, the Government will make an opening statement which is simply an outline to help you understand the evidence concerning alleged aggravating factors which it intends to try to

come back at 1:30. It's about 20 minutes till. Let's try to make it at 1:30. If you don't, don't worry about it because I appreciate you working through the lunch hour to get this thing done.

So nothing further, we'll see you after lunch, and thank you.

BY MR. WILLIAMS: Thank you, Your Honor.

[Recess taken at 12:40 p.m - Jury Out]

[Open Court - 1:53 p.m. - Jury Present]

BY THE COURT: Thank you, ladies and gentlemen. Please be seated.

Ladies and gentlemen of the jury, as I told you prior to the lunch break, the proof presentation has been completed in this second phase and we are now to the point where I will give you further instructions in this Phase 2.

I will call to your mind the fact that we have this jury instruction booklet which you utilized in the first phase. There have been added to it certain things. Y'all notice at the front, the index has changed. The index now shows not only the 26 instructions that you had at the outset, but also Number 27 which is the Court's preliminary instruction that I gave you prior to this Phase 2. And there are also additional instructions, instructions numbered 29 through 44 inclusive, which will be your instructions in this Phase 2.

I have put those instructions in the booklet and tabbed it

A-15

with a yellow tab that says Phase 2, if that can be of any assistance to you in helping you locate where they begin.

There is also a special verdict form in the booklet to which I will refer when giving you these instructions and it, likewise, has a tab at the top to show you where it is to be found and located.

I am going now to read these instructions to you. They are in the booklet. You will be given the booklet when you commence your deliberations. After I have read these instructions to you, the attorneys will make their summations and then the case will be presented to you for your consideration of this second phase.

Members of the jury, you have unanimously found the defendant guilty of the offenses charged in Counts 1 and 2 of the indictment. You must now consider whether justice requires that the defendant be sentenced to death or life imprisonment without the possibility of release for commission of these crimes. Regardless of any opinion you may have as to what the law may be or should be, it would be a violation of your oaths as jurors to base your verdict upon any view of the law other than that given to you in the instructions.

Some of the legal principals that you must apply to this sentencing decision duplicate those you followed in reaching your verdict as to guilt or innocence. Others are different. I have prepared full instructions on the law applicable to the sentencing decision in order to insure that you are clear in your duties

at this extremely serious stage of the case.

I have also prepared a special verdict form that you will complete. The form details special findings you are asked to make in this case and will help you perform you duties properly.

As I have just instructed you, the Government must meet its burden of proof beyond a reasonable doubt. A reasonable doubt is doubt based upon reason and common sense, after careful and impartial consideration of all the information received in this trial. It is the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it.

However, proof beyond a reasonable doubt does not mean pro beyond all possible doubt. The defendant does not have the burden of disproving the existence of anything the Government must prove beyond a reasonable doubt. The burden is wholly upon the Government. The law does not require the defendant to produce any evidence at all. It is the defendant's burden to establish any mitigating factors, but only by a preponderance of the evidence. This is a lesser standard of proof under the law than proof beyond a reasonable doubt.

A factor is established by a preponderance of the evidence if its existence is shown to be more likely so than no so. In other words, a preponderance of the evidence means such evidence as when considered and compared with that opposed to it produces

A-17

in your mind the belief that something is more likely true than not.

In making all the determinations you are required to make in this phase of the trial, you may consider any evidence that was presented during the guilt phase of the trial, as well as any evidence that is presented at this sentencing phase of the trial.

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it.

As I instructed you previously, in deciding what testimony of any witness to believe, consider the witness's intelligence; the opportunity the witness had to have seen or heard the things testified about; the witness's memory; any motives that witness may have for testifying a certain way; the manner of the witness while testifying; whether that witness said something different at an earlier time; the general reasonableness of the testimony, and the extent to which the testimony is consistent with other evidence that you believe.

The death penalty may be imposed only on persons who were 18 years of age or older at the time of the offense. If you find that the Government met its burden of proof in this regard, you should so indicate on the appropriate page of the special verdict form and continue your deliberations. If you find that the Government did not meet its burden of proof in this regard, you

should so indicate on the appropriate page of the special verdict form and no further deliberations will be necessary.

Before you may consider the imposition of the death penalty, you must first unanimously find beyond a reasonable doubt that the defendant intentionally aided and abetted in the killing of Sherman Williams.

Intent or knowledge may be proved like anything else. You may consider any statements made and acts done by the defendant and all the facts and circumstances in evidence which aid in a determination of defendant's knowledge or intent. You may, but are not required to, infer that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.

If you find that the Government met its burden of proof in this regard, you should so indicate on the appropriate page of the special verdict form and continue your deliberations. If you find that the Government did not meet its burden of proof in this regard, you should so indicate on the appropriate page of the special verdict form and no further deliberations will be necessary.

If you unanimously find beyond a reasonable doubt that defendant intentionally aided and abetted in the killing of Sherman Williams, you must then proceed to determine whether the Government has proven beyond a reasonable doubt the existence of any of the following alleged statutory aggravating factors:

A-19

One, that the defendant committed the offenses in an especially heinous, cruel or depraved manner in that they involved torture or serious physical abuse to Sherman Williams;

Two, that the defendant committed the offenses in the expectation of receipt of something of pecuniary value; or,

Three, that Sherman Williams was particularly vulnerable due to old age.

If the Government does not satisfy each of you beyond a reasonable doubt that at least one of these statutory aggravating factors exist, you should enter a finding to that effect on the appropriate page of the special verdict form and no further deliberations will be necessary.

In the event that you unanimously find that the Government has proven beyond a reasonable doubt the existence of at least one of the statutory aggravating factors, please enter that finding on the appropriate page of the special verdict form. You must then consider whether the Government has proved beyond a reasonable doubt the existence of any non statutory or miscellaneous aggravating factors it has alleged.

To establish that the defendant killed the victim in an especially heinous, cruel or depraved manner, the Government must prove that the killing involved either torture or serious physical abuse to the victim. The term heinous, cruel or depraved are stated in the disjunctive. Any one of them individually may constitute and aggravating circumstance warranting imposition of

You are asked on the jury form to identify any mitigating factors, statutory or non-statutory, that any one of you finds has been proved by a preponderance of the evidence, but you are not required to do so.

After you have completed your findings as to the existence or absence of any aggravating or mitigating factors, you will then engage in a weighing process in determining whether a sentence of death is justified. All of you must weigh any aggravating factors that you unanimously found to exist, whether statutory or non-statutory, and each of you must weigh any mitigating factors that you individually find to exist.

If you unanimously conclude that the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, that such a sentence of death is justified; or, in the absence of any mitigating factors, that the aggravating factors are themselves sufficient to justify a sentence of death. You shall record your finding that death is justified in the appropriate section of the special verdict form.

If you determine that death is not justified, you shall complete the appropriate section of the special verdict form and you shall then proceed to determine whether the appropriate punishment is life imprisonment without possibility of release, and shall record that finding in the appropriate section of the special verdict form.

Keep in mind, however, that regardless of your findings with respect to aggravating and mitigating factors, you are never required to recommend a death sentence. If you do not determine that the punishment of death or life imprisonment without possibility of release is appropriate, the Court shall sentence the defendant as provided by law.

In reaching your conclusion about the aggravating and mitigating factors in this case, the instructions I gave you prior to your deliberations at the guilt phase about determinations of credibility issues apply equally here. You, the jury, determine the credibility of the witnesses and the weight to give to their testimony and the other evidence.

Also, engaging in the weighing process, you must avoid any influences of passion, prejudice or sympathy. Your deliberations should be based on the evidence you have seen and heard and the law on which I have instructed you.

The process of weighing aggravating and mitigating factors against each other or weighing aggravating factors alone, if there are no mitigating factors, in order to determine the proper punishment is not a mechanical process. You should not simply count the number of aggravating and mitigating factors and reach a decision based on which number is greater. You should consider the weight and value of each factor. In this regard, you may note that the statutory aggravating factor concerning the defendant's intent duplicates the intent element of the offense.

Further, you may note that the aggravating factor concerning pecuniary gain duplicates one of the elements of the offense of robbery.

The law contemplates that different factors may be given different weights or values by different jurors. Thus, you may find that one mitigating factor outweighs all aggravating factors combined. If one or more of you so find, you should determine that a sentence of death not be imposed.

Similarly, you may find that a particular aggravating factor sufficiently outweighs all mitigating factors combined to justify a sentence of death. If so, you may determine that a sentence of death be imposed. Only you, the jury, are to decide what weight or value is to be given to a particular factor in your decision making process.

In order to find in favor of a sentence for the punishment of death, all 12 of you must unanimously vote in favor of a sentence of death. In order to find in favor of a sentence of life in prison without possibility of release, all 12 of you must unanimously vote in favor of a sentence of life in prison without possibility of release.

At the end of your deliberations, if you determine that the defendant should be sentenced to death or to life imprisonment without possibility of release, the Court is required to impose that sentence. If you do not determine that either the punishment of death or life imprisonment without possibility of release

is appropriate, the Court shall sentence the defendant as provid ed by law. You should not speculate on the sentence the defendant might receive.

It is your duty as jurors to discuss the issue of punishment with one another in an effort to reach agreement if you can do so. Each of you must decide this remaining question for yourself, but only after full consideration of the information with the other members of the jury. Please discuss all aspects of these sentencing issues among yourselves with candor, frankness, and a due regard for the opinions of one another.

While you are discussing this matter do not hesitate to re-examine your own opinion and to change your mind if you become convinced that you are wrong. But do not give up your honest beliefs as to the weight or the or the effect of the information solely because others think differently or simply to finish the case. Remember that the parties and the Court are relying upon you to give full, considered and mature consideration to this sentencing issue. By so doing, you carry out to the fullest your oaths as jurors to well and truly try the issues of this case and to render a just result.

In your consideration of whether the death sentence is justified, you must not consider the race, color, religious beliefs, national origin or sex of either the defendant or the victim. You are not to recommend a sentence of death unless you have concluded that you would recommend a sentence of death for

U.S. DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FILED

JUN 25 1997

CHRIS R. JOHNSON, CLERK
by: *Gail Ramsey*
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

UNITED STATES OF AMERICA

v.

Criminal No. 96-60022-001

JEFFERY WILLIAM PAUL

## SPECIAL VERDICT FORM

### I. AGE OF DEFENDANT

Instructions: Answer "YES" or "NO."

Do you, the jury, unanimously find that the government has established beyond a reasonable doubt that the defendant was, at the time of the offenses, eighteen (18) years of age or older?

YES ____✓____

NO _____

_____
FOREPERSON

Instructions: If you answered "NO" with respect to the determination in this section, then stop your deliberations, cross out Sections II, III, IV, V and VI of this form, and proceed to Section VII. Each juror should carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or

A-25

her decision.  You should then advise the court that you have reached a decision.

If you answered "YES" with respect to the determination in Section I, then continue your deliberations in accordance with the court's instructions and proceed to Section II which follows.

## II. REQUISITE MENTAL STATE

Instructions:  For the following, answer "YES" or "NO."

Do you, the jury, unanimously find that the government has established beyond a reasonable doubt that the defendant intentionally aided and abetted in the killing of Sherman Williams?

YES ___✓___

NO _____

_(signature)_
FOREPERSON

Instructions:  If you answered "NO" with respect to the determination in this section, then stop your deliberations, cross out Sections III, IV, V and VI of this form, and proceed to Section VII.  Each juror should carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or

-2-

A-26

her decision.  You should then advise the court that you have reached a decision.

If you answered "YES" with respect to the determination in Section II, then continue your deliberations in accordance with the court's instructions and proceed to Section III which follows.

### III.  STATUTORY AGGRAVATING FACTORS

Instructions :  For each of the following, answer "YES" or "NO."

Do you, the jury, unanimously find that the government has established the existence of any of the following aggravating factors beyond a reasonable doubt:

(1)  That the defendant committed the offenses in an especially heinous, cruel or depraved manner in that they involved torture or serious physical abuse to Sherman Williams?

YES ___✓___

NO _____

_____
FOREPERSON

-3-

(2)    That the defendant committed the offenses in the expectation of the receipt of something of pecuniary value?

YES ___✓___

NO _____

_____
FOREPERSON

(3)    That Sherman Williams was particularly vulnerable due to old age?

YES ___✓___

NO _____

_____
FOREPERSON

Instructions:  If you answered "NO" with respect to all of the Statutory Aggravating Factors in this Section III, then stop your deliberations, cross out Section IV, V, and VI of this form, and proceed to Section VII of this form.  Each juror should carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.  You should then advise the court that you have reached a decision.

If you answered "YES" with respect to one or more aggravating

-4-

factor in Section III, then continue your deliberations in accordance with the Court's instructions and proceed to Section IV which follows.

## IV.  NON-STATUTORY AGGRAVATING FACTORS

Instructions:  For each of the following answer "YES" or "NO."

Do you, the jury, unanimously find that the government has established the existence of the following aggravating factor beyond a reasonable doubt:

(1)  That the defendant is likely to commit criminal acts of violence in the future which would be a continuing and serious threat to society?

YES     ✓

NO     _____

_____
FOREPERSON

-5-

(2) That the defendant has committed, attempted to commit, and/or threatened to commit other acts of violence in addition to the capital offenses committed in this case, including but not limited to the following:

(a) An attempted armed robbery/murder at the Tri-States Liquor Store, Hot Springs, Arkansas on or about June 8, 1995.

YES _____

NO ___✓___

_____
FOREPERSON

(3) That the defendant successfully eluded capture by the Federal Bureau of Investigation until his arrest in Mississippi on August 22, ~~1995.~~ 1996.

dj

YES ___✓___

NO _____

_____
FOREPERSON

(4) That the defendant has demonstrated a lack of remorse for the capital offenses committed in this case, by statements and/or actions, including but not limited to one or more of the following:

(a) The defendant stated that he did not feel bad about the murder.

(b) The defendant stated the victim begged for his life.

(c) The defendant referred to the victim in vulgar terms.

YES    ✓

NO    _____

_____
FOREPERSON

-7-

(5)  That Sherman Williams was killed to prevent the
defendant from being identified as a participant in the
robbery?

YES    ✓

NO    _____

FOREPERSON

(6)(a)  That the victim had personal characteristics
as an individual human being including but not limited to
one or more of the following:

    (1)   Father
    (2)   Grandfather
    (3)   College Graduate
    (4)   Retired State Director of the FmHA
    (5)   Avid fisherman, photographer and jogger
    (6)   United States Army veteran

YES    ✓

NO    _____

FOREPERSON

-8-

(6)(b) That the family of the victim has suffered injury and loss, as a result of the victim's death, including but not limited to one or more of the following:

    (1)  Disruption of order
    (2)  Reality of violence
    (3)  A stunning, troubling experience
    (4)  Indescribable feeling of loss

            YES ___✓___

            NO  _____

_____
FOREPERSON

Instructions:  Regardless of whether you answered "YES" or "NO" with respect to the Non-Statutory Aggravating Factors in this Section IV, continue your deliberations in accordance with the court's instructions and proceed to Section V, which follows.


V.  MITIGATING FACTORS

Instructions:  For each of the following mitigating factors, you have the option to indicate, in the space provided, the number of jurors who have found the existence of that mitigating factor to be proven by a preponderance of the information.  If you choose not to make these written findings, cross out each page of Section V with a large "X" and then continue your deliberations in accordance with the instructions of the court.

Regardless of whether or not you choose to make written findings, a finding with respect to a mitigating factor may be made

-9-

A-33

by one or more of the members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such a factor established in considering whether or not a sentence of death shall be imposed, regardless of the number of other jurors who concur that the factor has been established.

Do you find, from a preponderance of the evidence, any of the following:

(1)  That defendant's participation in the offense. was relatively minor.

Numbers of jurors who so find ___0___.

(2)  That defendant does not have a significant prior history of other criminal conduct.

Numbers of jurors who so find ___0___.

(3)  That defendant committed ⸱ the offense while experiencing emotional disturbance.

Numbers of jurors who so find ___0___.

-10-

(4) Any other factors in defendant's background or character that mitigate against imposition of the death sentence.

Numbers of jurors who so find ___3___.

(5) That another defendant, Trinity Edward Ingle -- equally culpable -- will not be punished by death.

Numbers of jurors who so find ___0___.

The following are additional non-statutory factors in the defendant's background or character, or circumstances of the crime, or other relevant facts or circumstances which may be mitigating factors:

1. That defendant experienced parental neglect, abandonment and corruptive influence.

Number of jurors who so find ___12___.

2. That defendant experienced parental abdication as to holding defendant accountable for his behavior.

Number of jurors who so find ___12___.

-11-

3. That defendant experienced chaotic family instability.

Number of jurors who so find __12__.

4. That defendant experienced modeled parental irresponsiblity.

Number of jurors who so find __8__.

5. That defendant identified with criminally convicted peers.

Number of jurors who so find __12__.

6. That defendant reversed parental roles with his mother.

Number of jurors who so find __0__.

7. That defendant was youthful at the time of the offense.

Number of jurors who so find __6__.

The following extra spaces are provided to write in additional mitigating factors, if any, found by any one or more jurors. If none, write "NONE" and line out the extra spaces with a large "X." If more space is needed, write "CONTINUED" and use the reverse side of this page.

___. _WITNESSED SHOOTING IN MALL_

Number of jurors who so find __6__.

-12-



_____. _____
Number of jurors who so find.

_____. _____
Number of jurors who so find _____.

_____. _____
Number of jurors who so find _____.

Instructions: Regardless of whether or not you choose to make written findings for the Mitigating Factors in Section V above, continue your deliberations in accordance with the court's instructions and proceed to Section VI and Section VII which follow.

-13-

<u>VI.</u>   <u>DETERMINATION</u>

**A.  Death Sentence**

Based upon consideration of whether the aggravating factors
found to exist sufficiently outweigh any mitigating factor or
factors found to exist, or in the absence of any mitigating
factors, whether the aggravating factors are themselves sufficient
to justify a sentence of death, we determine, by unanimous vote,
that a sentence of death shall be imposed.

YES _____✓_____

NO _____

If you answer "YES," sign your names here, and then proceed to
Section VII.  If you answer "NO," the foreperson alone should sign,
and you should proceed to Section VI (B):

Date:   June 25, 1997

FOREPERSON

-14-

**B.   Sentence of Life in Prison Without Possibility of Release**

Based upon consideration of whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of any mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death, we determine, by unanimous vote, that a sentence of life in prison without possibility of release shall be imposed.

YES _____

NO _____

If you answer "YES," sign your names here, and then proceed to Section VII.  If you answer "NO," the foreperson alone should sign, and you should proceed to Section VII.  If you answer "No," then the Court will sentence the defendant as provided by law.

_____      _____

_____      _____

_____      _____

_____      _____

_____      _____

_____      _____
                                        FOREPERSON

Date:   June _____, 1997

-15-

A-39

## VII. Certification

By signing below, each juror certifies that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or the victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same recommendation regarding a sentence for the crime or crimes in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant, or the victim, would have been.

FOREPERSON

Date: June 25, 1997

-16-

A-40

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

UNITED STATES OF AMERICA                                    PLAINTIFF

v.              Crim. No. 96-60022-001

JEFFERY WILLIAM PAUL                                        DEFENDANT

## JUDGMENT AND ORDER OF SENTENCE

NOW on this **25** day of June, 1997, comes on for consideration the above-captioned matter and the Court, being well and sufficiently advised, finds and orders as follows:

1. The defendant, Jeffery William Paul, represented by Lynn Williams and Steve Oliver, was found guilty on Counts One and Two by a jury after a plea of not guilty. Accordingly, the defendant is hereby adjudged guilty on both of the following counts:

   **Count One:** On or about the 22nd day of June, 1995, in the Western District of Arkansas, Hot Springs Division, the defendant, Jeffery William Paul, and another individual known to the grand jury, while aiding and abetting each other, within the confines of Hot Springs National Park, a place within the special maritime and territorial jurisdiction of the United States, pursuant to Title 18 U.S.C. § 7(3), did, with malice aforethought, kill Sherman Williams, by means of gunshot wounds, in the perpetration of a robbery, in violation of 18 U.S.C. § 1111(a) and § 2.

   **Count Two:** On or about the 22nd day of June, 1995, in the Western District of Arkansas, Hot Springs Division, the defendant, Jeffery William Paul, and another individual known to the grand jury, while aiding and abetting each other, within the confines of Hot Springs National Park, a place within the special maritime and territorial jurisdiction of the United States, pursuant to Title 18 U.S.C. § 7(3), did, knowingly carry and use a firearm, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, to-wit: a robbery in the National Park, Hot Springs, Arkansas, on

-1-

A-41

AO 72A
(Rev. 8/82)

or about June 22, 1995 as set forth in Count 1 of this indictment which is realleged and incorporated by reference herein, in violation of Title 18 U.S.C. § 924(c)(1) and in the course of this violation caused the death of a person through the use of a firearm, which killing is a murder as defined in Title 18 U.S.C. § 1111, in that the defendant did unlawfully kill Sherman Williams by shooting him with the firearm in the perpetration of the robbery and attempted perpetration of the robbery in violation of Title 18 U.S.C. § 924(i)(1) and Title 18 U.S.C. § 2.

2. As pronounced on this date, June 26, 1997, the defendant is sentenced as provided herein below. This sentence is imposed pursuant to Title 18, United States Code, Sections 3591 through 3597, including particularly Sections 3594 and 3596. The Court declines to impose a fine on either Count due to the defendant's inability to pay. It is ordered that the defendant shall pay to the United States a special assessment of $100.00 For Count One and $100.00 For Count Two, which sums shall be due immediately.

3. Based upon the findings of the Special Verdict Form and Determination of the jury on June 15, 1997, the Court hereby imposes upon the defendant a sentence of death on Count One and a sentence of death on Count Two.

(a) The sentence shall be executed by a United States Marshal designated by the Director of the United States Marshals Service;

(b) The sentence shall be executed by intravenous injection of a lethal substance or substances in a quantity sufficient to cause death;

(c) The sentence shall be executed on September 8, 1997, and at a place designated by the Director of the Federal Bureau of

-2-

A-42

Prisons, which date is not sooner than 60 days from entry of the judgment of death;

(d) If the date passes by reasons of a stay of execution, then a new date shall be designated promptly by the Director of the Federal Bureau of Prisons when the stay of execution is lifted;

(e) The sentence shall be executed at a federal penal or correctional institution designated by the Director of the Federal Bureau of Prisons, by a United States Marshal, designated by the Director of the United States Marshals Service, and assisted by additional personnel, selected by the Marshal and the Warden of the designated institution, acting at the direction of the Marshal;

(f) The sentence shall be executed by intravenous injection of a lethal substance or substances in a quantity sufficient to cause death, such substances or substances to be determined by the Director of the Federal Bureau of Prisons and to be administered by qualified personnel selected by the Warden and acting at the direction of the Marshal;

(g) Unless the President of the United States interposes, the United States Marshal shall not stay execution of the sentence on the basis that the prisoner has filed a petition for executive clemency.

4. The Court directs and orders that implementation of the sentence of death shall be in accordance with the provisions of 18 U.S.C. § 3596 and that, pursuant thereto, the United States

-3-

A-43

AO 72A
(Rev. 8/82)

Marshal charged with the said implementation shall supervise the same in the manner prescribed by the law of the State of Arkansas, as set forth in Ark. Code Ann. §§ 5-4-615, 5-4-617, and 16-90-502-504, and any other applicable provision of the law of the State of Arkansas governing the implementation of a sentence of death.

5.     After the execution has been carried out, qualified personnel selected by the Warden of the designated institution shall conduct an examination of the body of the prisoner to determine that death has occurred and shall inform the Marshal and the Warden of his determination.     Upon notification of the prisoner's death, the Marshal shall complete and sign the Return hereunder or any similar document and shall file such document with the sentencing court.

6.     The remains of the prisoner shall be disposed of according to procedures established by the Director of the Federal Bureau of Prisons.

7.     No officer or employee of the Department of Justice shall be required to be in attendance at or to participate in any execution if such attendance or participation is contrary to the moral or religious convictions of the officer or employee, or if the employee is a medical professional who considers such participation or attendance contrary to medical ethics.     For purposes of this section, "participation" includes personal preparation of the condemned individual and the apparatus used for execution and supervision of the activities of other personnel in carrying out such activities.

-4-

A-44

8. The defendant, Jeffery William Paul, is hereby committed to the custody of the Attorney General or her authorized representative for appropriate detention pending execution of this sentence.

IT IS SO ORDERED.

JIMM LARRY HENDREN
UNITED STATES DISTRICT JUDGE

U. S. DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FILED

JUN 25 1997

CHRIS R. JOHNSON, CLERK
BY: _____
DEPUTY CLERK

I hereby certify that the foregoing is a true copy of the original on file in this Court.
Christopher R. Johnson, Clerk

By _____
Deputy Clerk

This document entered on docket in compliance with Rule 32 (b) (1) and Rule 55 FRCrP.

-5-

A-45    on 6.25.97 by WPT .

AO 72A
(Rev. 8/82)

**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-4533

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

EZEKIEL DONJA GARDNER,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville.  James C. Fox, Senior District Judge.  (4:11-cr-00065-F-1)

Argued:  March 24, 2016                    Decided:  May 18, 2016

Before MOTZ, GREGORY, and KEENAN, Circuit Judges.

Affirmed in part, vacated in part, and remanded by published opinion.  Judge Keenan wrote the opinion, in which Judge Motz and Judge Gregory joined.

**ARGUED**: William Michael Dowling, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, L.L.P., Raleigh, North Carolina, for Appellant.  Phillip Anthony Rubin, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF**: Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

A-46

BARBARA MILANO KEENAN, Circuit Judge:

Ezekiel Gardner was tried by a jury and found guilty of possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1), 924. The conviction was based on police officers' recovery of a handgun from Gardner's vehicle during a traffic stop, after receiving a tip from a confidential informant that Gardner, a felon, possessed a firearm. At sentencing, the district court determined that Gardner was an armed career criminal based on his three prior convictions for felony common law robbery in North Carolina (North Carolina common law robbery), and sentenced him to serve a term of 262 months' imprisonment.

On appeal, Gardner challenges: (1) the district court's denial of his motion to suppress the search of his vehicle and certain statements he made to the police; (2) the court's denial of his motion for a new trial; and (3) the court's determination at sentencing that he is an armed career criminal. Upon our review, we affirm the district court's denial of Gardner's motion to suppress and his motion for a new trial. However, because we conclude that North Carolina common law robbery is not categorically a violent felony, we hold that the district court erred in sentencing Gardner as an armed career criminal. Accordingly, we vacate Gardner's sentence and remand for resentencing.

A-47

I.

A.

The government's evidence regarding the traffic stop showed that on January 13, 2011, Detective Kenneth Adams of the police department in Farmville, North Carolina, received a telephone call from a reliable, confidential informant. The woman stated that Gardner was a convicted felon who possessed a firearm, that he was driving a white Lincoln Town Car, and that he presently was located at a particular house on Thorne Street in Farmville. Detective Adams already had a working relationship with this informant, who had completed at least five controlled drug purchases for a regional drug enforcement task force, and consistently had provided accurate information.

Based on the informant's telephone call, Detective Adams, Lieutenant Paul McLawhorn, and Chief Donnie Greene proceeded in a squad car to the identified house on Thorne Street and saw a white Lincoln Town Car parked near the house. The officers drove around the block, taking time to confirm that Gardner was the registered owner of the vehicle. When the officers approached the house again, they saw that Gardner had entered the Lincoln and was driving toward a nearby intersection. The officers observed Gardner make a three-point turn in the intersection and begin driving in the opposite direction. The

A-48

officers turned to follow Gardner's vehicle and initiated a traffic stop.

Detective Adams observed that "as soon as the blue lights come on, I saw [Gardner] dip down in the car, and I saw his right shoulder disappear as if he was - he was either reaching for something or putting something under the seat." After Gardner stopped his car, Adams and McLawhorn approached the car. Adams held his gun at his side as he walked toward the driver-side door. Chief Greene remained in the squad car to request assistance.

Adams confirmed Gardner's identity by examining his driver's license, and asked Gardner to step out of the vehicle. Adams observed that Gardner appeared nervous and kept looking in the direction of the vehicle's floor. When Adams asked Gardner if he had any weapons on his person, Gardner replied that he did not. Upon conducting a patdown search of Gardner, Adams did not find a weapon. Adams ordered Gardner to walk to the rear of the vehicle, but did not place handcuffs on him at this time.

Adams informed Gardner that Adams had received information that Gardner had a firearm in his possession. When Adams asked Gardner if he had "anything illegal in his car," Gardner responded by hanging his head. Continuing, Adams asked, "What is it that is illegal in your car[?]." Gardner replied, "I have a gun." When asked if he was allowed to possess a firearm,

Gardner stated that he was not and that he was a convicted felon.

McLawhorn searched the passenger compartment of the car, and found a handgun underneath the driver's seat. At that point, Gardner was placed in handcuffs and was taken to the police station.

After arriving at the station, Adams and Detective Rose Edmonds advised Gardner of his Miranda rights, which Gardner waived by signing a written waiver form. Gardner told the officers that he had purchased the gun from "Cobe," that Gardner later loaned the gun to "Pudgy," and that Gardner had received the firearm back from "Pudgy" that day.

B.

Before trial, Gardner moved to suppress both the evidence recovered from his car during the stop and the statements he made at the police station following his arrest. The district court denied the motion, concluding that the search was justified by the "automobile exception" to the warrant requirement of the Fourth Amendment, and that, therefore, any post-arrest statements were lawfully obtained.

At trial, Gardner renewed his suppression motion. In addition to restating his earlier arguments, he also sought suppression of the statements he made to the police during the traffic stop on the ground that he was not advised of his

Miranda rights. The district court again denied Gardner's motion, as well as his motion for judgment of acquittal. The jury found Gardner guilty of the offense charged, and the district court later denied Gardner's motion for a new trial.

At sentencing, Gardner challenged his classification as an armed career criminal. He argued that his predicate convictions for North Carolina common law robbery did not qualify categorically as violent felonies. The district court disagreed, concluding that the convictions qualified as violent felonies under the residual clause of the Armed Career Criminal Act (the ACCA). See 18 U.S.C. § 924(e)(2)(B). The court sentenced Gardner to serve a term of 262 months' imprisonment, which sentence fell at the bottom of the Sentencing Guidelines range. This appeal followed.

II.

Gardner raises several issues on appeal, but primarily challenges the legality of the search of his vehicle and his classification as an armed career criminal. We first address the legality of the search.

A.

Gardner argues that the police officers lacked reasonable suspicion to initiate a stop of his vehicle. He contends that the confidential informant was not a reliable source of

information, and that she did not provide sufficient detail about Gardner such as predictive information regarding his criminal behavior. Alternatively, Gardner asserts that even if the initial stop was lawful, the stop evolved into an unlawful arrest, and he should have been given Miranda warnings before any questioning occurred. Thus, Gardner challenges as inadmissible the statements he made after the stop and also seeks to suppress the gun uncovered from his vehicle. We disagree with Gardner's arguments.

We review a district court's factual findings in deciding a motion to suppress for clear error, and the court's legal conclusions de novo. United States v. Black, 707 F.3d 531, 537 (4th Cir. 2013). We construe the evidence in the light most favorable to the government, the prevailing party in the district court. United States v. Farrior, 535 F.3d 210, 217 (4th Cir. 2008), abrogated on other grounds by United States v. Williams, 808 F.3d 238 (4th Cir. 2015).

An officer must have reasonable suspicion of criminal activity to perform an investigative stop authorized by Terry v. Ohio, 392 U.S. 1 (1968). United States v. Branch, 537 F.3d 328, 336 (4th Cir. 2008). Under this standard, the officer must have a "particularized and objective basis for suspecting the particular person stopped of criminal activity." Navarette v. California, 134 S. Ct. 1683, 1687 (2014) (citation omitted).

A-52

This standard is less demanding than the probable cause standard, and can be based on "information that is less reliable than that required to show probable cause." Alabama v. White, 496 U.S. 325, 330 (1990).

We have stated that when an investigative stop is based on unverified information provided by a known informant, a tip of this nature "may alone justify a reasonable suspicion of criminal activity." United States v. Singh, 363 F.3d 347, 355 (4th Cir. 2004). And when police obtain information corroborating such a tip, this circumstance adds significant support for a finding of reasonable suspicion. See generally id.; United States v. Harris, 39 F.3d 1262 (4th Cir. 1994).

In Singh, a confidential informant had reported that a tractor-trailer, bearing Canadian license plates and being driven by two men of Indian descent, contained a large amount of marijuana and had become disabled on a highway in Greensboro, North Carolina. 363 F.3d at 350. After police initially could not find the truck at the described location, the informant provided more precise information. Id. When officers arrived at the specified location, they observed the tractor-trailer being towed. Id. at 351. The officers halted the towing operation, and ultimately found marijuana in the disabled tractor-trailer. Id. at 351-52. The district court granted the

defendants' motion to suppress, holding that the seizure of the defendants was not supported by a reasonable suspicion of criminal activity. Id. at 353.

In reviewing this decision on appeal, we observed that before stopping the tractor-trailer, the officers had verified its location, the source of its license plates, and the description of the vehicle's occupants. Id. at 355. Based on this record, we concluded that the district court erred in holding that the officers lacked reasonable suspicion to execute the vehicle stop. Id. at 355-56.

The present case is governed by our decision in Singh. As in Singh, the officers here received a tip from a known informant that a certain convicted felon driving a white Lincoln Town Car could be found at a particular location with a gun in his possession. This tip alone may have supported a finding of reasonable suspicion.[1] See id. at 355. But the officers in the present case also had corroborated some of the information provided by the informant, namely, the presence of a white Lincoln Town Car at the described location and verification that Gardner was the owner of that vehicle. While the officers did not confirm that Gardner was a convicted felon before initiating

_____

[1] We find no merit in Gardner's argument that the informant, his former girlfriend, was unreliable given their prior relationship and the fact that police had paid her for providing the tip in question.

A-54

the stop, every detail provided by a tipster need not be independently verified to support a finding of reasonable suspicion. See White, 496 U.S. at 331-32. Accordingly, we hold that the district court did not err in concluding that the traffic stop was supported by reasonable suspicion.[2]

We also disagree with Gardner's alternative argument that the encounter matured into a de facto arrest, requiring that rights be given pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), when the officers detained Gardner at the rear of his vehicle. The Supreme Court has held that an individual is not "in custody" for purposes of Miranda when an officer detains him to ask "a moderate number of questions . . . to try to obtain information confirming or dispelling the officer's suspicions." Berkemer v. McCarty, 468 U.S. 420, 439-40 (1984). In the present case, the officers asked Gardner questions directly related to their reasonable suspicion that he had a firearm in

---

[2] We are not persuaded by Gardner's reliance on the Fifth Circuit's decision in United States v. Roch, 5 F.3d 894 (5th Cir. 1993). In the present case, the informant provided many of the details that were lacking in Roch, such as the make and model of the car, as well as the suspect's full name. Moreover, the Fifth Circuit relied heavily in its analysis on cases regarding the need to corroborate information obtained from anonymous informants. See id. at 898-99 (citing White, 496 U.S. 325). In contrast, the officers here relied on information supplied by a known, reliable informant, which both this Court and the Supreme Court have acknowledged may be sufficient, even absent any corroboration, to support a finding of reasonable suspicion. See Singh, 363 F.3d at 355; Adams v. Williams, 407 U.S. 143, 146-47 (1972).

A-55

his possession. The fact that Gardner did not feel free to leave did not convert this brief period of questioning into the functional equivalent of a "stationhouse interrogation" that would require Miranda warnings. Id. at 438-39. We therefore conclude that because Gardner's interaction with the police during the traffic stop did not evolve into a de facto arrest, his statement concerning the gun was not obtained in violation of his Fifth Amendment rights.

Gardner's acknowledgement of the gun, together with the informant's tip and Gardner's furtive behavior, provided the officers probable cause to search Gardner's car. We therefore conclude that the officers lawfully searched Gardner's automobile.[3] See United States v. Kelly, 592 F.3d 586, 589-90 (4th Cir. 2010). Accordingly, we hold that the district court

---

[3] The officers also could have searched Gardner's automobile lawfully based solely on their reasonable belief that Gardner was dangerous and might "gain immediate control" of a firearm in the passenger compartment of his car. See Michigan v. Long, 463 U.S. 1032, 1049 (1983). The informant's tip, along with Adams's observation that Gardner reached down below his seat and nervously looked in the direction of the car floor, independently justified the search of the car. Under this analysis, the validity of the search is not affected by Gardner's detention at the rear of the vehicle during the traffic stop. See id. at 1051-52.

did not err in denying Gardner's motion to suppress his statements and the weapon found in his car.[4]

## B.

Gardner also challenges his designation as an armed career criminal under the ACCA. He argues that his three predicate convictions for North Carolina common law robbery do not qualify as "violent felonies" because: (1) the definition of a violent felony under the ACCA's "residual clause" is unconstitutional; and (2) his robbery convictions do not qualify as violent felonies under the "force clause" of the ACCA. The government counters that Gardner's convictions categorically are violent felonies under the force clause because North Carolina common law robbery, which requires the taking of property by means of "violence" or "fear," necessarily involves the "use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). We disagree with the government's argument.

### 1.

Gardner preserved this issue in the district court and, therefore, we review de novo the question whether his prior state convictions qualified as "predicate felony conviction[s]

---

[4] We likewise affirm the district court's denial of Gardner's motion for a new trial, which was based on the same argument that the district court improperly admitted illegally obtained evidence.

A-57

for purposes of a federal sentence enhancement." United States v. Valdovinos, 760 F.3d 322, 325 (4th Cir. 2014). A "violent felony" is defined under the ACCA as any crime "punishable by imprisonment for a term exceeding one year" that either "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the force clause), or "is burglary, arson, or extortion, [or] involves use of explosives" (the enumerated language), or "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the residual clause). 18 U.S.C. § 924(e)(2)(B)(i), (ii). Because the Supreme Court recently held in Johnson v. United States, 135 S. Ct. 2551, 2557 (2015), that the language of the residual clause is unconstitutional, North Carolina common law robbery can qualify as a "violent felony" only if it matches the definition of a violent felony under the force clause.[5]

---

[5] Contrary to the government's suggestion, North Carolina common law robbery does not categorically match the crime of extortion listed in the enumerated language of 18 U.S.C. § 924(e)(2)(B)(ii). North Carolina common law robbery involves the non-consensual taking of money or property from another, while the generic crime of extortion is defined as "obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats." Scheidler v. Nat'l Org. for Women, Inc., 537 U.S. 393, 409 (2003) (citation omitted); see also 18 U.S.C. § 1951(b)(2) (defining Hobbs Act extortion). The element of consent "is the razor's edge that distinguishes extortion from robbery." United States v. Zhou, 428 F.3d 361, 371 (2d Cir. 2005). Notably, both North Carolina and the federal government have codified extortion as a crime

North Carolina common law robbery is the "felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear." North Carolina v. Smith, 292 S.E.2d 264, 270 (N.C. 1982). Typically, when determining whether a previous conviction qualifies as a violent felony under the ACCA, we apply the "categorical approach," considering only the conviction itself and the elements of the offense, not the particular facts of the crime. United States v. Baxter, 642 F.3d 475, 476 (4th Cir. 2011).

Only in a "narrow range of cases," when a crime is divisible, do we employ the "modified categorical approach," in which a court may consider a limited set of documents to determine the basis of a defendant's conviction. See Descamps v. United States, 133 S. Ct. 2276, 2283-85 (2013). A crime is divisible when it includes multiple "alternative elements" that create different versions of the crime, at least one of which would qualify under the federal definition and at least one of which would not. See id.; Omargharib v. Holder, 775 F.3d 192, 197-98 (4th Cir. 2014).

A crime is not divisible simply because it may be accomplished through alternative means, but only when

distinct from robbery. See N.C. Gen. Stat. § 14-118.4 (2015); 18 U.S.C. § 1951(b)(1), (2).

alternative elements create distinct crimes.  Omargharib, 775 F.3d at 198.  Alternative elements of a crime, as opposed to alternative means of committing a crime, are "factual circumstances of the offense that the jury must find unanimously and beyond a reasonable doubt."  Id. (citation and internal quotations omitted).  Therefore, when determining the divisibility of a crime, we may consider how "courts generally instruct juries with respect to that offense."  See United States v. Royal, 731 F.3d 333, 341 (4th Cir. 2013).

Under North Carolina's pattern jury instructions, the final element of common law robbery requires "that the taking was by violence or by putting the person in fear."  N.C. Pattern Instructions—Crim. 217.10.  Thus, the jury need not agree unanimously that the felonious taking was committed by the use of violence or by instilling fear, only that one of the two means was employed.  Accordingly, North Carolina common law robbery may be committed by the alternate means of violence or fear that do not constitute different elements of distinct crimes.  The crime, therefore, is an indivisible offense, in which the modified categorical approach "has no role to play."  Descamps, 133 S. Ct. at 2285.

2.

We turn now to apply the categorical approach.  To qualify as a categorical match with the force clause, North Carolina

A-60

common law robbery necessarily must have as an element the "use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). "Physical force" for purposes of the force clause does not include the "slightest offensive touching" that might sustain a misdemeanor battery conviction under some state laws. See Johnson v. United States, 559 U.S. 133, 139 (2010). Instead, "physical force" within the context of the ACCA means "violent force—that is, force capable of causing physical pain or injury to another person." Id. at 140 (emphasis in original).

In determining whether North Carolina common law robbery necessarily requires the use, attempted use, or threatened use of "physical force," within the meaning of the ACCA, we focus on "the minimum conduct necessary for a violation" under state law. Castillo v. Holder, 776 F.3d 262, 267 (4th Cir. 2015). Such minimum culpable conduct includes any conduct to which there is a "realistic probability, not a theoretical possibility," that a state would apply the law. Moncrieffe v. Holder, 133 S. Ct. 1678, 1684-85 (2013) (citation omitted). When considering a North Carolina common law crime, our analysis of minimum culpable conduct is informed by decisions of the Supreme Court of North Carolina, while decisions of North Carolina's intermediate appellate court "constitute the next best indicia

A-61

of what state law is."   See Castillo, 776 F.3d at 268 & n.3 (citation omitted).

As we noted above, North Carolina common law robbery may be committed by the alternative means of violence or fear. Accordingly, if either means of committing this crime does not require the "use, attempted use, or threatened use" of "physical force," then North Carolina common law robbery does not categorically match the force clause of the ACCA.   See Omargharib, 775 F.3d at 197.   We first address North Carolina common law robbery by means of "violence."

With respect to the commission of robbery by means of "violence," the Supreme Court of North Carolina has explained: "Although actual force implies personal violence, the degree of force used is immaterial, so long as it is sufficient to compel the victim to part with his property."   State v. Sawyer, 29 S.E.2d 34, 37 (N.C. 1944).   This definition, therefore, suggests that even de minimis contact can constitute the "violence" necessary for a common law robbery conviction under North Carolina law.

Later decisions by North Carolina's intermediate appellate court support the conclusion that even minimal contact may be sufficient to sustain a robbery conviction if the victim forfeits his or her property in response.   For example, the North Carolina Court of Appeals has held that a defendant's act

of pushing the victim's hand off of a carton of cigarettes was sufficient "actual force" to uphold a common law robbery conviction. See State v. Chance, 662 S.E.2d 405, at *3-4 (N.C. Ct. App. June 17, 2008) (unpublished). Also, the Court of Appeals upheld a conviction when a defendant pushed the shoulder of an electronics store clerk, causing her to fall onto shelves while the defendant took possession of a television. State v. Eldridge, 677 S.E.2d 14 (N.C. Ct. App. June 2, 2009) (unpublished).

Based on these decisions from North Carolina's appellate courts, we conclude that the minimum conduct necessary to sustain a conviction for North Carolina common law robbery does not necessarily include the use, attempted use, or threatened use of "force capable of causing physical pain or injury to another person," as required by the force clause of the ACCA. Johnson, 559 U.S. at 140. Therefore, we hold that North Carolina common law robbery does not qualify categorically as a "violent felony" under the ACCA.[6]

Our analysis is not altered by decisions of this Court interpreting the crime of robbery in other jurisdictions. See

---

[6] Because we conclude that North Carolina common law robbery committed by means of "violence" does not require the use, attempted use, or threatened use of "physical force," within the meaning of the ACCA, we need not consider whether robbery committed by means of "fear" otherwise would require the use, attempted use, or threatened use of "physical force."

United States v. Presley, 52 F.3d 64, 69 (4th Cir. 1995) (concluding that Virginia common law robbery, which requires the taking of property "by violence or intimidation," is a violent felony under the force clause); United States v. Wilson, 951 F.2d 586, 588 (4th Cir. 1991) (explaining that Maryland common law robbery is a "crime of violence" under the force clause of the career offender guidelines). The decisions in Presley and Wilson do not inform our decision today, because they pre-date the Supreme Court's decision in Moncrieffe, and do not evaluate the minimum conduct to which there is a realistic probability that a state would apply the law.

Moreover, the definitions of common law robbery in Maryland and Virginia have little or no relevance to North Carolina appellate courts' interpretation of North Carolina law. As this Court recently has explained, "a State is entitled to define its crimes as it sees fit."[7]  United States v. McNeal, -- F.3d --, 2016 WL 1178823, at *10 (4th Cir. Mar. 28, 2016). And North Carolina has defined common law robbery to encompass cases involving the use of minimal force, which does not satisfy the condition of "violent force" required by federal law for application of the ACCA enhancement. Accordingly, we hold that

[7] Likewise, this Court's decision in McNeal does not impact our decision, because that case addressed the federal crime of armed bank robbery.

A-64

the district court erred in applying the ACCA enhancement based on Gardner's convictions for North Carolina common law robbery, and we vacate Gardner's sentence and remand the case for re-sentencing.[8]

## III.

For these reasons, we affirm Gardner's conviction. We vacate Gardner's sentence based on the district court's erroneous application of the ACCA enhancement and remand for re-sentencing.

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED

---

[8] Because we vacate Gardner's sentence, we do not address his other arguments challenging his sentence.

S.D.N.Y. – N.Y.C.
02-cr-150
Preska, C.J.

# United States Court of Appeals
FOR THE
SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of January, two thousand sixteen.

Present: Reena Raggi,
Richard C. Wesley,
Christopher F. Droney,
*Circuit Judges.*

Michael Freeman,
*Petitioner,*

v.

15-3687

United States of America,
*Respondent.*

Petitioner moves for leave to file a successive 28 U.S.C. § 2255 motion in the United States District Court for the Southern District of New York. The United States does not oppose. Upon due consideration, it is hereby ORDERED that Petitioner's motion for leave to file a successive § 2255 motion is GRANTED because he has made a *prima facie* showing that he satisfies the successive motion requirements with respect to his proposed claim based on *Johnson v. United States*, 135 S. Ct. 2551 (2015) (holding that imposition of enhanced sentence under residual clause of Armed Career Criminal Act, 18 U.S.C. § 924(e), violates Due Process Clause).

This Court has determined only that Petitioner has made the requisite *prima facie* showing, *see* 28 U.S.C. § 2244(b)(3)(C), and the district court is directed to address, as a preliminary inquiry under § 2244(b)(4), whether *Johnson* announced a new rule of constitutional law made retroactive to cases on collateral review and, thus, permits Petitioner's new § 2255 claim to proceed. *See Welch v. United States*, --- S.Ct. ---, 2016 WL 90594 (Jan. 8, 2016) (granting writ of certiorari on retroactivity of *Johnson*).

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A-66

# United States Court of Appeals

## For the Seventh Circuit
### Chicago, Illinois 60604

Submitted February 2, 2016
Decided February 19, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 16-1193

| | |
|---|---|
| JESUS RUIZ,<br>    *Applicant,*<br><br>    *v.*<br><br>UNITED STATES OF AMERICA,<br>    *Respondent.* | On Motion for an Order Authorizing the District Court to Entertain a Second or Successive Motion for Collateral Review. |

## ORDER

Jesus Ruiz has filed an application pursuant to 28 U.S.C. § 2244(b)(3), seeking authorization to file a successive motion to vacate under § 2255. Ruiz was convicted of three counts of using a firearm in connection with a crime of violence, 18 U.S.C. § 924(c). Ruiz wants to challenge those convictions under *Johnson v. United States*, 135 S. Ct. 2551 (2015), which held that the residual clause of the Armed Career Criminal Act is unconstitutionally vague. Because *Johnson* announced a new substantive rule of constitutional law, it has retroactive application. *Price v. United States*, 795 F.3d 731 (7th Cir. 2015).

The government concedes Ruiz's ability to make a prima facie showing that his convictions were based on the definition of a crime of violence in 18 U.S.C. § 924(c)(3)(B), which is similar to the residual clause of the Armed Career Criminal Act. The

government argues, though, that § 924(c)(3)(B) differs enough from the ACCA's residual clause that it was not invalidated by *Johnson*. But that subsection is identical to 18 U.S.C. § 16(b), which we held is unconstitutionally vague under *Johnson*. *United States v. Vivas-Ceja*, 808 F.3d 719 (7th Cir. 2015).

Accordingly, we **GRANT** Ruiz's application and **AUTHORIZE** the district court to consider his claim.

**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**
1100 East Main Street, Suite 501, Richmond, Virginia 23219

May 19, 2016

NOTICE OF AUTHORIZATION TO
FILE SUCCESSIVE APPLICATION

No. 16-619,    In re: Rico Bias
1:12-cr-00528-ELH-2

TO:  Parties and Counsel

The court has granted authorization for movant to file a successive application for post-conviction relief.

In accordance with Local Rule 22(d), the post-conviction application that was attached to movant's motion for authorization has been transmitted to the district court with the order granting authorization to file. Any proposed amendment to the post-conviction application should be filed in the district court rather than in the court of appeals.

Amy L. Carlheim, Deputy Clerk

A-69

FILED: May 19, 2016

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-619
(1:12-cr-00528-ELH-2)

In re: RICO LAMONT BIAS,

Movant.

O R D E R

Rico Lamont Bias has filed a motion pursuant to 28 U.S.C. §§ 2244, 2255(h) (2012) for authorization to file a second or successive 28 U.S.C. § 2255 (2012) motion. Bias has made a prima facie showing that a new rule of constitutional law announced in Johnson v. United States, 135 S. Ct. 2551 (2015), and held to apply retroactively to cases on collateral review by Welch v. United States, 136 S. Ct. 1257 (2016), may apply to his case. We grant authorization for Bias to file a second or successive § 2255 motion, thus permitting consideration of the motion by the district court in the first instance. The one-year limitations period of 28 U.S.C. § 2255(f)(3) (2012) for filing a § 2255 motion raising a claim relying on the Supreme Court's decision in Johnson expires on June 26, 2016.

A-70

Entered at the direction of the panel: Judge Shedd, Judge Harris, and Senior Judge Davis.

For the Court

/s/ Patricia S. Connor, Clerk

A-71

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT
1100 East Main Street, Suite 501, Richmond, Virginia 23219

May 19, 2016

### NOTICE OF AUTHORIZATION TO
### FILE SUCCESSIVE APPLICATION

No. 16-583,    In re: Damon Jones
8:94-cr-00441-PJM-1

TO: Parties and Counsel

The court has granted authorization for you to file a successive application for post-conviction relief.

In accordance with Local Rule 22(d), the post-conviction application that was attached to your motion for authorization has been transmitted to the district court with the order granting authorization to file. Any proposed amendment to your post-conviction application should be filed in the district court rather than in the court of appeals.

Sharon A. Wiley, Deputy Clerk

FILED: May 19, 2016

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-583
(8:94-cr-00441-PJM-1)

In re:   DAMON JONES,

Movant.

O R D E R

Damon Jones has filed a motion pursuant to 28 U.S.C. §§ 2244, 2255(h) (2012) for authorization to file a second or successive 28 U.S.C. § 2255 (2012) motion.   Jones has made a prima facie showing that the new rule of constitutional law announced in Johnson v. United States, 135 S. Ct. 2551 (2015), and held to apply retroactively to cases on collateral review by Welch v. United States, 136 S. Ct. 1257 (2016), may apply to his case.   We grant authorization for Jones to file a second or successive § 2255 motion, thus permitting consideration of the motion by the district court in the first instance.   The one-year limitations period of 28 U.S.C. § 2255(f)(3) for filing a § 2255 motion raising a claim relying on the Supreme Court's decision in Johnson expires on June 26, 2016.

A-73

Entered at the direction of the panel:   Judge King, Judge Wynn, and Judge Harris.

For the Court

/s/ Patricia S. Connor, Clerk

2

A-74